IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GAIL KEMMLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 05-361 Erie |
| | ) | Judge McLaughlin |
| TRI-STATE HEALTH INVESTORS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | | |
| KATHLEEN WEISMAN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 06-13 Erie |
| | ) | Judge McLaughlin |
| TRI-STATE HEALTH INVESTORS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The cases captioned above are before the Court upon the following motions: Plaintiff Gail Kemmler's unopposed Motion to Consolidate in Case No. 05-361; Plaintiff Kathleen Weisman's unopposed Motion to Consolidate filed in Case No. 06-13 (Dkt. #70); Weisman's Motion to Strike in Case No. 06-13 (Dkt. #69); and Motions for Summary Judgment filed by all Defendants in both cases (Case No. 06-13, Dkt. #56; Case No. 05-361, Dkt. #43).

**I.  Background**

As an initial matter, the Court notes that the facts and issues underlying each of the two actions are identical in all material respects and, therefore, the unopposed Motions to Consolidate are granted. The Motions for Summary Judgment and respective Briefs in Opposition are also identical, so the Court will consider them together, differentiating between Plaintiff Weisman and Plaintiff Kemmler only when necessary.

Plaintiffs, Gail Kemmler ("Kemmler") and Kathleen Weisman ("Weisman"), are each registered nurses residing in Erie, Pennsylvania. Defendant, Tri-State Health Investors, LLC, ("Tri-State Health") is a Florida limited liability company with a principal place of business in Miami Beach, Florida.

In Spring, 2004, Kemmler and Weisman each sought employment with an Erie, Pennsylvania facility doing business as "Bayridge Specialty Care." (Kemmler Complaint, ¶1; Weisman Complaint, ¶¶ 12-13). Weisman interviewed for the position on or about February 20, 2004, and Kemmler interviewed in March, 2004. (Weisman Complaint, ¶ 13; Kemmler Deposition, p. 14). Each Plaintiff was interviewed by Janet Kuhns ("Kuhns"), the Director of Staff Development at the facility. (Kemmler Depo., p. 14; Weisman Complaint, ¶ 13). During their interviews, the Plaintiffs informed Kuhns that they had previously filed an age or sex discrimination complaint against a prior owner/operator of the facility. Kuhns allegedly responded by informing them that Bayridge would not consider applicants that had previously sued the facility and rejected their applications for employment. (Kuhns Deposition, p. 14; Kemmler Depo., p. 14; Weisman Complaint, ¶14). Plaintiffs then filed a charge of discrimination with the EEOC contending that they were denied employment because of their prior discrimination lawsuits. (Weisman Complaint, ¶18; Kemmler Complaint, ¶¶ 9-10). The EEOC issued a right to sue letter in both cases and the instant lawsuits ensued.

## II. Standard for Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating whether the non-moving party has established each necessary element, the Court must grant all reasonable inferences from the evidence to the non-moving party. Knabe v. Boury Corp., 114 F.3d 407, 410, n.4 (3d Cir. 1997) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita, 475 U.S. at 587).

## III. Material Disputed Facts and Analysis

The sole contention driving the Defendant's motion for summary judgment is that Tri-State Health was not, as a matter of law, the employer who committed the allegedly discriminatory acts. The Third Circuit has interpreted Title VII's definition of "employer" to mean "the person, or group of persons, who owns and manages the enterprise." Ziegler v. Anesthesia Associates of Lancaster, 74 Fed. Appx. 197 (3rd Cir. 2003). "The employer can hire and fire employees, can assign tasks to employees and supervise their performance, and can decide how the profits and losses of the business are to be distributed." Wells v. Clackamas Gastroenterology Associates, 538 U.S. 440, 450

(2003). In determining whether an entity is an employer, we look at "all of the incidents of the relationship ... with no one factor being decisive." Id (quoting Nationwide Mutual Insurance v. Darden, 503 U.S. 318, 324 (1992)). We also note that "where [a] defendant, though not the plaintiff's employer, nevertheless has such a degree and range of control over the plaintiff that it is the plaintiff's *de facto* or indirect employer . . . the relationship of the parties should be regarded as an employment relationship." Conroy v. City of Philadelphia, 421 F.Supp.2d 879, 888-89 (E.D. Pa. 2006) (quoting Tyrrell v. City of Scranton, 134 F.Supp.2d 373, 380 (M.D. Pa. 2001)); see also United States v. Bd. of Educ. for the Sch. Dist. of Phila., 911 F.2d 882, 891 (3rd Cir. 1990).

For the reasons discussed below, we find that there are material issues of fact as to whether Tri-State was an "employer" for Title VII purposes at the time of Kemmler and Weisman's interviews. Specifically, there is a material issue of fact as to whether Tri-State exercised management and control over Bayridge sufficient to support employer status as described in the Management Agreement or *de facto* by virtue of its independent exercise of the requisite degree of management and control.

The record reflects that in September, 2003, prior to the Plaintiffs' interviews, Bayridge Specialty Care had negotiated a Management Agreement with Defendant Tri-State whereby Tri-State would "have the responsibility and commensurate authority to conduct, supervise and effectively manage the day-to-day operations of 'Applicable Facilities,'" including the obligation to "[r]ecruit, hire, train, promote, assign, supervise, manage and discharge all personnel." The Management Agreement included a facility identified as IHS Facility No. 20130, a moniker referring to the Bayridge Specialty Care facility, in the schedule of "Applicable Facilities." (Klein Depo., p. 29). The Agreement purported to take effect "commencing on the date hereof . . ." and was signed and dated September 1, 2003. (Management Agreement, Exhibit B, p.2, Dkt. #56, Case No. 06-13).

Defendant Tri-State contends that the Management Agreement never became operative and, therefore, it never assumed management of the Bayridge facility as outlined in the Agreement. In support of this contention, Defendant relies on the testimony of Avi Klein ("Klein"), the owner of Tri-State Health, who testified, in essence, that the failure of various conditions precedent relating to stock purchases and landlord approval resulted in the failure of the Agreement to have become effective.[1] (Klein Depo, pp. 17-18). Klein further testified that Tri-State Health never intended to assume operational control of Bayridge, but merely to provide "back office" administrative services such as financial and payroll assistance. (Klein Depo., pp. 42-43, 46).

Plaintiffs, on the other hand, contend that a fair reading of the Management Agreement demonstrates that it specifically contemplated interim management by Tri-State prior to the conditions precedent having been met. In this regard, Plaintiffs note that the Agreement states that the parties "desire[d] to retain the services of the Manager (ie, Tri-State) to provide Manager's experience, skills, supervision and certain personnel in the management and operation of the Applicable Facility on an interim basis pending... [satisfaction of the conditions], and the Manager desires to provide those services." We also note that the Management Agreement granted Tri-State the power to "conduct, supervise and effectively manage [] day-to-day operations," including the obligation to "[r]ecruit, hire, train, promote, assign, supervise, manage and discharge all personnel." These obligations mirror the indicia of employership handed down by the Supreme Court. See Wells, 538 U.S. at 450 ("The employer can hire and fire employees, can assign tasks to employees and supervise their performance, and can decide how the profits and losses of the business are to be distributed.").

---

[1] Plaintiff Weisman filed a motion to strike portions of Avi Klein's deposition testimony, objecting to certain corrections and clarifications that Klein appended after reviewing the transcript. This motion is denied.

Plaintiffs also rely on record evidence suggestive that Tri-State was exerting management and control over the Bayridge facility at the time when the alleged discrimination occurred. Plaintiffs have submitted promotional materials that were allegedly displayed in the reception area of the Bayridge facility and handed out to job applicants during initial interviews that indicated that "Tri-State Healthcare" was the provider of nursing home services to the facility. Kuhns, the Staff Development Coordinator of the facility, and Sheila Rist ("Rist"), the Human Resources Administrative Assistant, both testified that their belief was that Tri-State had been the Manager of the facility since the Management Agreement went into effect on September 1, 2003 and continuing through October, 2006. (Rist Depo, p. 6; Kuhns Depo., p. 9). Both Kuhns and Rist received paychecks with "Tri-State" on the check stubs. (Rist Depo., p. 47; Kuhns Depo, pp. 41-42). Kuhns and Rist also each indicated that they interacted with Dietrich, the regional Human Resources Director for Tri-State, when seeking clarification concerning human resource policies and procedures for the Bayridge facility.[2] Indeed, Rist indicated that Dietrich was "responsible at that time for the nine facilities that Tri-State managed as the HR regional director. If something came up, that's who we went to." (Rist Depo, p. 8). We also note that Kuhns testified that Bayridge had a policy of refusing employment to applicants who had previously filed a discrimination lawsuit and that this policy had been confirmed by both Rist and Dietrich. (Kuhns Depo., pp.18, 32). Dietrich testified that she worked for Tri-State and reported directly to Tri-State's principal, Avi Klein. (Dietrich Depo., pp. 6-9).

Drawing all reasonable inferences in favor of the Plaintiffs as we must, we find that there is

---

[2] For that matter, another factual dispute exists as to the identity of Dietrich's employer. While Dietrich testified that she worked for Tri-State in human resources as a Regional Director and reported directly to Avi Klein, Klein denied that Dietrich even held a position with Tri-State. (Dietrich Depo., p. 6-7; Klein Depo, p. 21).

6

a triable issue of fact as to whether Tri-State, at the time of the alleged discriminatory acts, functioned as either the actual or *de facto* employer for Title VII purposes. Consequently, the motions for summary judgment in 06-13 and 05-361 are DENIED.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GAIL KEMMLER,<br><br>Plaintiff,<br>v.<br><br>TRI-STATE HEALTH INVESTORS, LLC,<br><br>Defendant. | C.A. No. 05-361 Erie<br>Judge McLaughlin |
| KATHLEEN WEISMAN,<br><br>Plaintiffs,<br>v.<br><br>TRI-STATE HEALTH INVESTORS, LLC,<br><br>Defendant. | C.A. No. 06-13 Erie<br>Judge McLaughlin |

## **ORDER**

AND NOW, this 22nd day of August, 2008, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendant's Motions for Summary Judgment in Case No. 06-13 (Dkt. #56) and Case No. 05-361 (Dkt. #43) are DENIED. Plaintiff Weisman's Motion to Strike in Case No. 06-13 (Dkt. #69) is DENIED. The unopposed Motions to Consolidate are GRANTED and the lead case shall be Case No. 05-361. The Clerk of Courts is directed to close Case No. 06-13.

/s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record. ___